## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION** | 2:12-md-02311-SFC-RSW<br>Honorable Sean F. Cox |
| In Re: Exhaust Systems | Case No. 2:16-cv-03705 |
| **THIS RELATES TO:**<br>State Attorneys General | |
| **STATE OF CALIFORNIA,**<br>**ex rel. Rob Bonta,**<br>**Attorney General of the State of California** | Case No. 2:23-cv-13150 |
| | **Complaint for Damages, Civil Penalties, and Injunctive Relief** |
| **Plaintiffs,** | **Demand for Jury Trial** |
| **v.** | |
| **Bosal Industries-Georgia, Inc. and Bosal USA, Inc.** | |
| **Defendants** | |

The State of California, through Rob Bonta, the Attorney General, in his official capacity as the chief law enforcement officer of the State of California, files this complaint against Defendant Bosal Industries-Georgia, Inc. and Bosal USA, Inc. (Defendants or "Bosal"), and alleges:

## NATURE OF ACTION

1. Defendants and their co-conspirators conspired to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain the price of Exhaust Systems. These price-fixed parts were installed in automobiles purchased by Plaintiffs.

2.  For the duration of the conspiracy, from at least as early as January 1, 2002 through such time as the anticompetitive effects of the Defendants' conduct ceased, Defendants' actions resulted in fixing, stabilizing, and maintaining prices for Exhaust Systems. Due to Defendants' unlawful conduct, the State of California and its state agencies were deprived of open and fair competition when purchasing the Exhaust Systems and paid higher-than-competitive prices for such parts and for automobiles installed with them.

3.  Competition authorities in the United States, the European Union, and Japan have been investigating a number of conspiracies involving automotive parts since at least February 2010.

4.  Defendants and their co-conspirators affected millions of dollars of commerce. The State of California, California businesses, and consumers suffered antitrust injury to their business or property due to Defendants' conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and artificially inflate prices for the Exhaust Systems during the duration of the conspiracy.

## JURISDICTION AND VENUE

5.  Plaintiffs bring this action to secure damages, permanent injunctive relief, civil penalties, and reasonable attorneys' fees pursuant to Section 4 (15 U.S.C. § 15) and Section 16 of the Clayton Act (15 U.S.C. §26) for violations of Section 1 of the Sherman Act (15 U.S.C. §1), as well as sections 16720 and 17200 *et seq.* of the California Business and Professions Code.

6.  This Court has original jurisdiction over the subject matter of all causes of action alleged in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state

law claims are so related to the federal question claims that they form part of the same case or controversy that would ordinarily be tried in one judicial proceeding.

7. Venue is proper in the United States District Court, Eastern District of Michigan, pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. § 1391. Defendants transact business in the United States, including in this district, committed an illegal act, or is found in this district, and a substantial part of the events giving rise to the claims arose in this district.

## PARTIES

### Plaintiffs

8. The State of California is authorized to file Count I under 15 U.S.C. §§ 15 and 26 to enjoin Defendant from the violations alleged herein.

9. The Attorney General brings this action on behalf of the Plaintiffs the State of California, including California state agencies, for damages, civil penalties, injunctive, and equitable relief.

10. The Attorney General of California is the chief legal officer of the State of California and the enforcement authority of sections 16720 and 17200 *et seq.* of the California Business and Professions Code, and is authorized to file Counts II, III, and IV. As California's chief law enforcement officer, the Attorney General enforces California's antitrust laws, including the Cartwright Act. Cal. Bus. & Prof. Code §§ 16700 - 16770. The Attorney General is specifically authorized to obtain injunctive and other equitable relief, restitution, and civil penalties to redress unfair, unlawful, and fraudulent business practices. *See* Cal. Bus. & Prof. Code §§ 17203, 17204, 17206.

**Defendants**

11. Defendant Bosal Industries-Georgia, Inc. is a Georgia corporation with its principal place of business in Ypsilanti, Michigan. Defendant Bosal USA, Inc. is a New Jersey Corporation with its principal place of business in Budd Lake, New Jersey.

**Co-Conspirators and Agents**

12. Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as Defendant in this lawsuit, and individuals, the identities of whom are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

13. Plaintiffs reserve the right to name some or all of persons or entities who acted as co-conspirators with Defendants in the alleged offenses as Defendants.

14. Any reference in this Complaint to any act, deed, or transaction by a corporation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

15. Defendants are also liable for acts of companies they acquired through mergers or acquisitions which are done in furtherance of the alleged conspiracy.

16. Defendants named herein acted as the agents or joint venture of or for the other co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

//

## FACTUAL ALLEGATIONS

17. Defendants engaged in the business of manufacturing and selling Exhaust Systems to automobile manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere.  An "Exhaust System" is a system of piping and other parts that conveys noxious exhaust gases away from the passenger compartment and reduces the level of pollutants and engine exhaust noise emitted. An Exhaust System includes the following components: manifold, flex pipes, catalytic converter, oxygen sensor, isolator/gasket/clamps, resonator assemblies/pipe accessories, and muffler/muffler assemblies. An Exhaust System has a "hot end," which is the part of the Exhaust System that is mounted to the engine which is generally comprised of a manifold and catalytic converter, and a "cold end," which is the part of the Exhaust System that is mounted to the underbody of the car which generally contains a muffler, pipes and possibly a catalytic converter. In some instances, the component parts of an Exhaust System are sourced separately while in other instances they are sourced together.

18. The exhaust manifold is the first part of the Exhaust System to receive burned exhaust from the engine. The exhaust manifold funnels the burned exhaust to the exhaust pipes. The exhaust manifold also burns any fuel that was burned inadequately by the engine before funneling it to the exhaust pipes. The exhaust then passes through the catalytic converter, where any harmful compounds are converted to harmless compounds, and through the resonator and muffler on its way towards the tail pipe, which discharges the burned exhaust away from the vehicle.

19. Exhaust Systems have three major functions: (i) to channel waste combustion products outside the engine (ii) to reduce noise generated by the engine; and (iii) to clean emissions

that can harm the environment. An Exhaust System is a vital component that is essential for the functioning of a vehicle engine. Accordingly, the demand for Exhaust Systems is directly linked to the number of vehicles produced per year.

20. Exhaust Systems are installed by vehicle original equipment manufacturers ("OEMs") in new vehicles as part of the automotive manufacturing process. For new vehicles, OEMs – mostly large automotive manufacturers – purchase Exhaust Systems directly from Defendant. When purchasing Exhaust Systems, OEMs issue Requests for Quotations ("RFQs") to automotive parts suppliers. These RFQs may be issued on a model-by-model basis for model specific parts or for a specific engine to be incorporated into multiple models. Manufacturers of Exhaust Systems submit quotations, or bids, to automobile manufacturers in response to RFQs. Typically, the bidding process for a particular model or a particular engine begins approximately three years prior to the start of production.

21. In a number of instances, Defendants manufacture Exhaust Systems in the U.S. specifically for use in vehicles sold in the U.S. In those instances where Defendant manufactures Exhaust Systems abroad, the OEM customer will generally instruct the Defendants to ship Exhaust Systems directly to into the U.S. for installation by the OEM in vehicles sold in the U.S. OEM customers often request that Defendants include the cost of shipping the Exhaust Systems in Defendants' bids. Because the cost of shipping Exhaust Systems varies depending upon factors such as the location in which the vehicle will be manufactured, Defendants often know where the vehicle will be manufactured and sold well in advance of being awarded the business.

22. During the period of conspiracy, Defendants manufactured Exhaust Systems (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in

Europe and elsewhere for export to the United States and installation in vehicles manufactured and sold in the United States, and/or (c) in Europe and elsewhere for installation in vehicles manufactured in Europe and elsewhere for export to and sale in the United States.

23. Defendants have sold Exhaust Systems to multiple automobile, and these parts were installed them in automobiles made and sold in the United States.

**Structural Characteristics of the Automotive Parts Market**

24. The structural characteristics of the automotive parts market are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market. These characteristics include high barriers to entry and inelastic demand.

25. There are substantial barriers to entry in the market for Exhaust Systems. It would require substantial initial costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long standing relationships with customers. These costs are considered high barriers to entry thereby making market entry more difficult if not altogether precluding it.

26. Due to high barriers to entry, incumbent firms have incentive to collude and keep supra-competitive prices. High barriers to entry also facilitate the maintenance of collusion since incumbents do not face the risk of new entrants engaging in price competition.

27. "Elasticity" is a term used in economics to describe the sensitivity of supply and demand to changes in the price. Demand for a certain product is "inelastic" when an increase in price of the product creates only a small change in the quantity demanded of that product.

Consumers of the product whose demand is inelastic would continue to buy it despite a price increase.

28. When customers are not sensitive to a price increase, a cartel can increase price and maintain relatively level sales volume.  Thus, it could continue to keep supra-competitive prices with relatively stable demand and increase profit.

### Government Investigations

29. The United States Department of Justice ("Department of Justice"), as well as authorities in the European Union and Japan, started global, industry-wide investigations into possible violations of the antitrust laws in the auto parts industry in 2010.  The complete scope of the investigations is unknown.

30. The Department of Justice publicly announced aspects of the investigation when FBI agents raided the offices and factories of suspected companies. So far 46 companies have been convicted and collective fines total more than $2.9 billion.

### Trade and Commerce

31. During the period of conspiracy, Defendants and their co-conspirators sold Exhaust Systems to automobile manufacturers located in various states in the United States in a continuous and uninterrupted flow of interstate and foreign trade and commerce.  In addition, equipment and supplies necessary to the production and distribution of Exhaust Systems sold by Defendants and their co-conspirators, as well as payments for such parts sold by Defendants and their co-conspirators, traveled in interstate and foreign trade and commerce.

32. Plaintiffs purchased a substantial volume of automobiles and trucks.  A substantial volume of vehicles containing the Exhaust Systems manufactured by Defendants and their co-conspirators were sold to California state agencies, California businesses, and California consumers.

33. The anticompetitive act was intentionally directed at the United States market for Exhaust Systems because Defendants and their co-conspirators intentionally sold them to automobile manufacturers which in turn sold vehicles in the United States and in the State of California.  The business activities of Defendants and their co-conspirators in connection with the production and sale of Exhaust Systems that were the subject of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

### The Pass-Through of Overcharges to Consumers

34. Defendants' and their co-conspirators' conspiracy to fix, stabilize, and maintain the price of Exhaust Systems at artificial levels resulted in harm to Plaintiffs because it resulted in Plaintiffs paying higher prices for such parts and automobiles installed with them than they would have paid in the absence of the conspiracy.  The entire overcharge at issue was passed onto the State of California.

### Fraudulent Concealment

35. Throughout the period of conspiracy, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct from Plaintiffs.

36. Even though Plaintiffs exercised reasonable diligence, they could not discover the violations of law alleged in this Complaint until long after the commencement of its conspiracy.

37. The Department of Justice began investigation into conspiracies in the auto part industry as early as 2010, but the complete scope of products and companies involved in the conspiracies has not been disclosed to the public yet.

38. Defendants' participation in the conspiracy and its conduct in furtherance of the goals of the conspiracy were not publicly known until the Corrected Class Action Complaint for Damages and Injunctive Relief was filed on May 26, 2016 in the Eastern District of Michigan. The complaint named Bosal Industries-Georgia, Inc. as a defendant for engaging in a long running conspiracy to fix prices, rig bids, and/or allocate markets for Exhaust Systems.

39. Plaintiffs could not have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance of the goals of the conspiracy, and fraudulently concealed their activities through various means and methods designed to avoid detection.

40. Defendants and their co-conspirators successfully and affirmatively concealed the nature of their conspiracy and unlawful conduct in furtherance of the conspiracy in at least the following respects:

    a. By agreeing among themselves to meet at locations where the conspiracy was less likely to be detected;

b.  By agreeing among themselves to engage in illegal bid-rigging and price-fixing conspiracy, which is by its nature self-concealing; and

c.  By agreeing among themselves to keep the existence of the conspiracy secret, including the usage of secret code names.

41. Plaintiffs had no knowledge of the alleged conspiracy or of any facts or information that might have led to the discovery of the conspiracy in the exercise of reasonable diligence, at least prior to May 26, 2016, when the Corrected Class Action Complaint was filed naming Bosal Industries-Georgia, Inc. as a defendant.

42. Defendants' and their co-conspirators' effective, affirmative, and fraudulent concealment effectively prevented timely detection by Plaintiffs, and was a substantial factor in causing Plaintiffs' harm.

**Injury**

43. But for Defendants' and their co-conspirators' anticompetitive acts, Plaintiffs would have been able to purchase automobiles that incorporated Exhaust Systems at lower prices or at prices that were determined by free and open competition.

44. Defendants' and their co-conspirators' unlawful activities took place within interstate and foreign trade and commerce, and had direct, substantial, and reasonably foreseeable effect on United States and California commerce.

45. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Plaintiffs were not able to purchase the Exhaust Systems and automobiles installed with them at prices that were determined by free and open competition.  Consequently, Plaintiffs have been injured because they paid more than they would have paid in a free and open competitive market. There is a domestic injury that is concrete, quantifiable, and

directly traceable back to the Defendants' and their co-conspirators' anticompetitive conduct.

46. As Plaintiffs paid more than what they would have paid absent the conspiracy, Defendants' and their co-conspirators' conduct has resulted in deadweight loss to the economy of the State of California, including reduced output, higher prices, and reduction in consumer welfare.

47. As a direct and proximate result of the unlawful conduct alleged in this Complaint, Defendants and their co-conspirators benefitted unjustly from the supra-competitive and artificially inflated prices.  The unjust financial profits on the sale of Exhaust Systems resulted from their illegal and anticompetitive conduct.

## VIOLATIONS ALLEGED

### Count I

### (Violation of Section 1 of the Sherman Act)

48. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

49. Defendants and their co-conspirators engaged in a conspiracy which unreasonably restrained the trade or commerce among the several States and with foreign nations; thus, its conduct violates Section 1 of the Sherman Act (15 U.S.C. §1).  The State of California is entitled to relief resulting from the Defendants' conduct.

50. Defendants' and their co-conspirators entered into a continuing agreement, understanding, and conspiracy to raise, fix, maintain, and stabilize prices charged for Exhaust Systems during the period of conspiracy.

51. Their unlawful conduct in furtherance of the conspiracy was intentionally directed at the United States market for Exhaust Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices of such parts in the United States.

52. The State of California has been injured by being forced to pay artificially inflated prices for Exhaust Systems and automobiles installed with such parts than it would have paid in the absence of the conspiracy.

53. As a direct and proximate result of Defendants' conduct, Plaintiffs have been harmed and will continue to be damaged by being forced to pay supra-competitive prices that they would not have paid in the absence of the Defendants' conduct.

54. The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

55. Unless permanently restrained and enjoined, Defendants will continue to unreasonably restrain fair and open competition for Exhaust Systems.  Plaintiffs are entitled to an injunction against Defendants to prevent and restrain the violations alleged herein.

## Count II

### (Violation of the Cartwright Act, Business & Professions Code Section 16720)

56. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

57. Beginning in at least as early as January 1, 2002 through such time as the anticompetitive effects of the Defendants' conduct ceased, Defendants and their co-conspirators entered

into and engaged in a continuing unlawful trust for the purpose of unreasonably

restraining trade in violation of California Business and Professional Code section 16720

58. Defendants and their co-conspirators violated California Business and Professional Code

section 16720 by forming a continuing unlawful trust and arranging a concerted action

among Defendants and their co-conspirators in order to fix, raise, maintain and stabilize

prices of Exhaust Systems.

59. In furtherance of the goals of the conspiracy, Defendants and their co-conspirators

conspired to:

    a.  fix, raise, maintain, and stabilize the price of Exhaust Systems;

    b.  submit rigged bids for the award of Exhaust Systems contracts for automobile

        manufacturers; and

    c.  allocate markets for Exhaust Systems amongst themselves.

60. The combination and conspiracy alleged herein has had, *inter alia*, the following effects:

    a.  price competition in the sale of Exhaust Systems has been restrained,

        suppressed, and/or eliminated in the State of California;

    b.  prices for Exhaust Systems sold by Defendants and their co-conspirators have

        been fixed, raised, maintained, and stabilized at artificially high and non-

        competitive levels in the State of California; and

    c.  Plaintiffs who purchased automobiles installed with price-fixed Exhaust

        Systems have been deprived of the benefit of free and open competition.

61. As a direct and proximate result of Defendants' and their co-conspirators' unlawful

conduct, Plaintiffs were injured in their business and property because they paid more for

Exhaust Systems and automobiles installed with price-fixed parts than they would have

paid in the absence of Defendants' and their co-conspirators' unlawful conduct.  As a result of Defendants' and their co-conspirators' violation of section 16720 of the California Business and Professions Code, Plaintiffs bring this claim pursuant to section 16750(c) and seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to section 16750(a) of the California Business and Professions Code.  The California Attorney General is entitled to fines and civil penalties to the maximum extent permitted by law under California Business and Professions Code section 16755.  The California Attorney General may also obtain injunctive relief under California Business and Professions Code section 16754.5.

**Count III**

**(Violation of the Unfair Competition Law, Business and Professions Code Section 17200)**

62. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint with the same meaning, force, and effect.

63. Beginning in at least as early as January 1, 2002 through such time as the anticompetitive effects of the Defendants' conduct ceased, Defendants and their co-conspirators committed acts of unfair competition, as defined by sections 17200, *et seq.*, of the California Business and Professions Code.

64. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants and their co-conspirators, as alleged herein, constituted a common continuing conduct of unfair competition including unfair, unlawful and fraudulent business practices within the

meaning of section 17200, *et seq.*, of the California Business and Professions Code, including, but not limited to, the following:

    a. The violations of section 16720, *et seq.*, of the California Business and Professions Code, set forth above, thus constitute unlawful acts within the meaning of section 17200 of the California Business and Professions Code;

    b. Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful, or fraudulent;

    c. Defendants' acts and practices are unfair to consumers of Exhaust Systems and of automobiles installed with price-fixed parts in the State of California, within the meaning of section 17200 of the California Business and Professions Code; and

    d. Defendants' acts and practices are fraudulent or deceptive within the meaning of section 17200 of the California Business and Professions Code.

    e. Defendants' actions to solicit others to join the conspiracy to suppress and eliminate competition by agreeing to rig bids for, and to fix, stabilize, and maintain prices and/or artificially inflate prices for Exhaust Systems, whether successful or not, are unfair business practices within the meaning of section 17200, *et seq.*, of the California Business and Professions Code.

65. The unlawful and unfair business practices of Defendants and their co-conspirators caused Plaintiffs to pay supra-competitive and artificially inflated prices for Exhaust Systems and automobiles installed with such parts.  Plaintiffs were injured in their business and

property because they paid more than they would have paid in the absence of Defendants'
and their co-conspirators' unlawful conduct.

66. The California Attorney General is entitled to recover civil penalties for the violations
alleged in this Complaint not to exceed $2,500 for each violation of California Business
and Professions Code section 17206.

## Count IV

## Unjust Enrichment

67. Plaintiffs incorporate by reference and allege as if fully set forth herein, each and every
allegation set forth in the preceding paragraphs of this Complaint with the same meaning,
force, and effect.

68. Plaintiffs were deprived of economic benefit because Defendants' and their co-
conspirators' anticompetitive conduct created supra-competitive and artificially inflated
prices for Exhaust Systems.

69. Defendants and their co-conspirators enjoyed unjust financial profits which were derived
from unlawful overcharges and monopoly profits.  Their financial profits are economically
traceable to overpayments for Exhaust Systems by Plaintiffs.

70. The supra-competitive and artificially inflated price for Exhaust Systems, and unlawful
monopoly profits enjoyed by Defendants and their co-conspirators are a direct and
proximate result of Defendants' and their co-conspirators' unlawful practices.

71. It would lead to injustice if Defendants and their co-conspirators could retain any of the
unlawful financial profits that are a direct and proximate result of its engagement in
unlawful, unfair, and fraudulent conduct.

72. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and unfair competition.  Plaintiffs are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants' and their co-conspirators' engagement in unlawful, unfair, and fraudulent conduct.

73. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their unlawful and anticompetitive conduct.  Under sections 17203 and 17204 of the California Business and Professions Code, Plaintiffs are accordingly entitled to an injunction against Defendants in order to restrain the violations alleged herein and to equitable relief which includes restitution which may have been acquired by means of Defendants' and their co-conspirators' unfair and anticompetitive conduct. Plaintiffs are also entitled to civil penalties to the maximum extent permitted by law pursuant to section 17206, *et seq.*, of the California Business and Professions Code.

**Prayer for Relief**

74. Accordingly, Plaintiffs request that this Court:

   a. Adjudge and decree that Defendants violated the Sherman Act (15 U.S.C. §1);

   b. Adjudge and decree that Defendants' contract, conspiracy, or combination constitutes an illegal and unreasonable restraint of trade in violation of the Cartwright Act, section 16720, *et seq.*, of the California Business and Professions Code;

18

c.  Adjudge and decree that Defendants' contract, conspiracy, or combination violates the Unfair Competition Law, section 17200, *et seq.*, of the California Business and Professions Code;

d.  Award to Plaintiffs the maximum amount permitted under the relevant federal antitrust law;

e.  Award to Plaintiffs damages, trebled, in an amount according to proof pursuant to section 16750 of the California Business and Professions Code;

f.  Award to Plaintiffs the deadweight loss (i.e. the general damage to the economy of the State of California) resulting from Defendants' illegal activities;

g.  Award to Plaintiffs restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment, or any acts in violation of federal and state antitrust or consumer protection statutes and laws, including section 17200, *et seq.*, of the California Business and Professions Code;

h.  Award to Plaintiffs pre- and post-judgment interest, and that the interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

i.  Award Plaintiffs the maximum civil penalties under section 17206 of the California Business and Professions Code for each violation of California Business and Professions Code section 17200, *et seq.* as set forth in this Complaint;

j.  Award Plaintiffs the maximum fines and civil penalties under section 16755 of the California Business and Professions Code for each violation of California

Business and Professions Code section 16720, et seq. as set forth in this
Complaint;

k.  Enjoin and restrain, pursuant to federal and state law, Defendants, their
affiliates, assignees, subsidiaries, successors, and transferees, and their officers,
directors, partners, agents and employees, and all other persons acting or
claiming to act on its behalf or in concert with them, from continuing to engage
in any anticompetitive conduct and from adopting in the future any practice,
plan, program, or device having a similar purpose or effect to the
anticompetitive actions set forth above;

l.  Award to Plaintiffs their costs, including reasonable attorneys' fees; and

m.  Order other legal and equitable relief as it may deem just and proper, including
such other relief as the Court may deem just and proper to redress, and prevent
recurrence of, the alleged violations in order to dissipate the anticompetitive
effects of Defendants' violations, and to restore competition.

## Jury Trial Demanded

75. Plaintiffs demand trial by jury for all causes of action, claims, or issues in this action
which are triable as a matter of right to a jury.

Dated: December 11, 2023

Rob Bonta
Attorney General of California

/s/ Michael Jorgenson
Paula Blizzard
Senior Assistant Attorney General
Michael Jorgenson
Supervising Deputy Attorney General
CA State Bar No. 201145
Winston H. Chen
Deputy Attorney General
 455 Golden Gate Avenue, 11th Floor
 San Francisco, CA 94102
 Tel: (415) 510-3882
 Michael.Jorgenson@doj.ca.gov
*Attorneys for Plaintiffs*